UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

NICKY RICHARD DUKE                                                                                           PLAINTIFF

v.                                                                                           CIVIL ACTION NO. 3:05CV-496-S

HARDIN COUNTY, et al.                                                                                     DEFENDANTS

**MEMORANDUM OPINION**

    This matter is before the court on motion of the defendants, Hardin County, Louis B. Lawson, Everett J. Hall, and John and Jane Does 1, 2, and 3, for summary judgment in this action alleging unconstitutional treatment of the plaintiff, Nicky Richard Duke, while being held in the Hardin County Detention Center ("Detention Center")(DN 18). For the reasons set forth herein, the motion of the defendants will be granted.

    A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. To defeat a motion for summary judgment, the plaintiff cannot merely rely upon conclusory allegations, but must come forward with "concrete evidence supporting his claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Company v. Simon Aerieals, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989), *citing, Celotex Corp. v. Cattrett*, 477 U.S. 317, 106

- 2 -

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Duke was lodged in the Detention Center on August 2, 2004 on a criminal complaint alleging the commission of several sexual offenses. He was indicted in Hardin County and Larue County in September of 2004. He entered pleas to charges in both counties in May and June of 2005, receiving a total sentence of six years. Duke was detained in the Detention Center from the date of his arrest until his transfer to the LaGrange Reformatory in May, 2005. The events in issue in this case are alleged to have occurred while he was housed in the Detention Center.

The complaint alleges that Duke suffered from various medical conditions when he entered the Detention Center including Crohn's Disease, high blood pressure, hepatitis C, and rheumatoid arthritis. Compl., ¶ 2. He alleges that the defendants "failed to monitor [his] high blood pressure; failed to treat his Chron's [sic] disease; failed to treat a broken tooth; and ignored [him] when he was suffering seriously from his medical condition." Compl., ¶ 3. He further alleges that "[o]n or about September 4, 2004, [he] was in severe pain and asked Lt. Hall for medical treatment. Instead of providing [him] with proper care, Lt. Hall grabbed him by the throat, drug him across the room and slammed him into some chairs. Lt. Hall then ordered that [he] be thrown in the hole, where he stayed for nine hours with no medical assistance." Compl., ¶ 4.

I.

The defendants contend that Duke has failed to exhaust his administrative remedies and thus the action must be dismissed. The exhaustion provisions of the Prison Litigation Reform Act, 42 U.S.C. § 1997e apply to persons incarcerated or detained in any facility who are accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 42 U.S.C. § 1997(e). Duke is presently an inmate at the Kentucky State Reformatory. Thus the Act applies to him. Duke alleges in his complaint that

> Plaintiff complained and grieved to the Jailer, the Attorney General's Office, the Department of Corrections and the Kentucky State Police regarding his treatment at the Hardin County Jail. Any disposition or administrative decision by these agencies is unavailable to the Plaintiff. Plaintiff has exhausted all known available administrative remedies.

Compl., ¶ 15. In response to the defendants' contention that he has not exhausted his remedies, Duke states that he did not receive a decision concerning his grievance. Therefore, he was prevented from taking any further steps in the grievance process. He attached a copy of an inmate request form dated November 12, 2004 suggesting that he and the officers submit to a polygraph test. The officer's response states that "Tebault has done his investigation and turned the report over to the Jailer. [I]t is up to the Jailer if he wants to hire or conduct another investigation." DN 23, Ex. 58. The defendants do not controvert Duke's assertion that he filed his grievance and that he did not receive a decision from the Jailer. Therefore, even if Duke did not formally exhaust the grievance appeal process, the court deems him to have exhausted his remedies because of the failure to respond. *Owens v. Keeling*, 461 F.3d 763, 772 (6th Cir. 2006), *citing, Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004)(holding "that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance").

II.

As an initial matter, Duke concedes that the Eighth Amendment does not apply to his claims. Brief in Response, p. 17. Additionally, Duke does not offer any evidence in support of his claims against John and Jane Does Nos. 1, 2, and 3. Therefore, claims against these unnamed parties will be dismissed.

Contrary to the contention of the defendants, under federal law, Hardin County, and Louis Lawson and Everett Hall in their official capacities are amenable to suit, as the cloak of sovereign immunity set out in *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) does not extend to municipalities or their officials. "While [a] County may be immune from suit under Kentucky law, it is not thereby immune from federal suits. 'Conduct by

persons acting under color of state law which is wrongful under 42 U.S.C. § 1983...cannot be immunized by state law.' *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The Supreme Court has 'repeatedly refused to extend sovereign immunity to counties' even where 'such entities exercise a "slice of state power."' *Northern Ins. Co. v. Chatham County*, ___U.S.___, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006)." *Wilson v. Elliott County, Kentucky*, 198 Fed. Appx. 471, 474 (6th Cir. 2006)(unpubl.). Official capacity claims against Lawson and Hall are effectively claims against Hardin County. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(individuals sued in their official capacities stand in the shoes of the entity they represent).

### III.

To succeed on a § 1983 claim against a local government, "the plaintiff must prove the injury of which he complains was caused by an unconstitutional government policy or custom. *See Monnell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)('[I]t is when execution of a government's policy or custom...inflicts the injury that the government as an entity is responsible under § 1983')." *Lambert v. Hartman*, 2008 WL 482279, *5 (6th Cir. Feb. 25, 2008).

> The complaint alleges that
>
> Defendants failed to employ qualified persons for positions of authority; to properly or conscientiously train and supervise the conduct of such persons after their employment; and to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional rights of the inmates at the jail; and to ensure that proper policies and procedures were followed to safeguard the health and safety of the inmates.
>
> Defendants were required by statute to promulgate medical and safety procedures to be implemented and followed at the jail. Defendants either failed to promulgate proper policies to protect the inmates and/or failed to follow their own policies and protocol established to diagnose and treat Plaintiff's condition. Defendants failed to provide proper and necessary medical treatment to Plaintiff and others similarly situated.

> Plaintiff will show that Defendants' treatment of him was not unusual, but a continuing pattern by Defendants of willfully and deliberately ignoring a serious medical risk and the medical needs of the inmates. Such conduct is the result of the customs and practices of the jail, which are systematically applied to all persons who exhibit medical conditions or problems while incarcerated at that jail.

Compl., ¶¶ 7, 8, 14. These conclusory statements stand wholly unsupported in the record. Duke has offered no evidence to substantiate a claim of a custom or practice of ignoring the serious medical needs of inmates. There has been no evidence offered that the Detention Center is lacking in policies and procedures for the medical care of its inmates nor evidence which would call into question the qualifications of the medical personnel it employs. As the alleged injury has not been shown to have been caused by a policy or custom of the jail, summary judgment will be granted in favor of the defendants on the official capacity claims alleging deliberate indifference to serious medical needs in violation of § 1983.

The official capacity claims concerning the alleged assault fare no better. To establish a policy, practice or custom with respect to assaults upon inmates (for which there are no facts whatsoever in the complaint), Duke offers an accusation by another inmate that he was struck by Hall in 2003. This is woefully inadequate to establish a policy, practice or custom of permitting assaults upon inmates in the Detention Center.

Hall was questioned in his deposition about this accusation. Apparently the inmate did not file a grievance. However, it appears that the matter was investigated, it was established that the inmate was "very intoxicated" at the time he was booked into the Detention Center. Hall was not reprimanded for the alleged encounter with him. A report appears in Hall's personnel file.[1] This very report belies the claim that there was a policy or custom of permitting corrections officers to

---

[1] The written report was apparently used during the deposition in questioning Hall about the incident. The report has not been provided to the court. Rather snippets of the deposition testimony discussing the report have been provided. While this is hardly admissible evidence of what occurred, the deposition pages were relied upon by Duke in attempting to survive summary judgment. We thus deal not with the admissibility of this evidence but instead refer to it herein merely to illustrate its lack of usefulness to Duke in furthering his claims.

assault inmates. The matter was, in fact, investigated and a report placed in the officer's file. Hall himself stated in his deposition that at some unknown time he had been reprimanded for "taking" an inmate "to the floor" in attempting to shower mace off of the inmate's body. Thus, by Hall's own admission, he has been held accountable for his conduct in his employment. Duke has cited no other incidents. Only one incident was found to warrant a reprimand. There has thus been no showing that any policy or custom of the Detention Center caused Duke's alleged injury. Summary judgment will be granted in favor of the defendants on the official capacity claims alleging assault in violation of § 1983.

IV.

Summary judgment must be granted in favor of the defendants in their individual capacity inasmuch as the claim for deliberate indifference to Duke's serious medical needs fails on the merits.

Summary judgment must be granted in favor of Hall to the extent that Duke includes Hall in his claims addressing the on-going management of Duke's diagnosed medical conditions. Hall cannot be held liable in his individual capacity without evidence that he was personally involved in the incidents that forms the basis for the claim. "[O]fficials should be liable in damages only for their own unconstitutional behavior." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). There is no evidence that Hall participated in the decision-making with respect to Duke's medical care. Therefore, these claims must be dismissed as to Hall in his individual capacity.

Duke does allege that on September 4, 2004, he sought medical care from Hall, did not receive it, and was assaulted by him. In order for there to be liability against Hall for deliberate indifference to serious medical needs of an inmate, there must be evidence that Hall knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The deposition testimony cited by Duke himself evidences that Hall was unaware of the particular medical conditions afflicting Duke. Hall is not a physician, nurse or skilled medical practitioner. As such, liability in this instance could attach only if Duke had a

need for medical care that was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 899 (6th Cir. 2004), *citing, Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990). There is no evidence in the record to substantiate a claim of an obvious need for medical care. The record evidence in this case is more akin to the facts in *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001) than those in *Blackmore, supra.*

In *Napier*, an arrestee suffering from kidney failure was prevented from receiving his scheduled dialysis for twenty-nine hours while he was incarcerated. He had missed dialysis treatments in the past, but alleged that he was injured in this instance by the jail's delay. The court held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier*, 238 F.3d at 742 (*quoting, Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994)). As noted in *Blackmore*, the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. *Blackmore*, 290 F.3d at 898.

By contrast, in *Blackmore*, the inmate had a sudden onset of appedicitis with observed and documented symptoms of sharp and extreme abdominal pain in the lower area which did not respond to antacids, with vomiting which persisted unabated for over two days before he was evaluated by a nurse. The court held that in that instance, the fact that his appendix did not rupture and an appendectomy was successfully performed did not warrant a finding in accordance with *Napier* that the absence of verifying medical evidence to establish the detrimental effect of the delay was fatal to his claim. Rather the court distinguished the facts before it from those in *Napier* involving a "long-term and well monitored illness." *Blackmore*, 390 F.3d at 899. The court found that '[w]hen priosn officials are aware of a prisoner's obvious and serious need for medical treatment and delay

medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity." *Id.*

In the case at bar, Duke complained of pain on September 4, 2004. He was monitored by Deputy Johnson who took his blood pressure, administered Motrin per instructions from the nurse on call, Nurse Franck, and returned Duke to his pod.[2] When he continued to complain, Duke was brought to the Shift Leader's Office for observation. A confrontation ensued between Duke and Hall at which point Duke alleges that Hall grabbed him by the arm and the throat and dragged him back across the room and slammed him into the chair where he had been sitting. Duke was placed in a MedWatch Cell by Johnson where he was observed until the following morning. Nurse Franck noted that Duke was observed to be in a deep sleep in the MedWatch Cell at 10:45 a.m. Duke was seen by Dr. Miller on September 8, 2004 where Duke reported that he had an episode concerning his Crohn's Disease which was "Gone now." Significantly, Duke did not report any injury from the altercation with Hall to Dr. Miller. On September 21, 2004, Dr. Miller saw Duke for a complaint of a bruise on his neck from a guard. Dr. Miller's exam revealed "no bruise."

Duke's alleged pain on September 4, 2004 from his Crohn's Disease did not present the obvious serious medical need as evidenced in *Blackmore*. Rather, the pain associated with his previously diagnosed and well-monitored medical condition was noted, monitored, and treated with Motrin with sufficient success to permit Duke to sleep peacefully through the night. He was seen by Dr. Miller three days later at which time he stated that the weekend episode was resolved. This is clearly more akin factually to *Napier* where the issue was the management of his diagnosed condition. Duke's complaints did not evidence a medical need that should have been seen as either serious or obvious by the officers entrusted with his care.

---

[2] The defendants have quoted deposition testimony and medical records which have not been provided to the court. Duke has not challenged the accuracy of these references however, so the court will accept the recitation therein.

There is no objective evidence that Duke suffered any injury from the events of September 4, 2004, as required to be shown by *Napier, supra*. The bleeding into his colostomy bags reported by Duke were not verified by any medical evaluation.[3] In any event, his complaints of bleeding and pain were continually addressed and monitored by repeated testing and examination, and he was treated for his reported symptoms. The medical records are replete with reported maladies which were documented and addressed. As noted in *Smith v. Franklin County,* 227 F.Supp.2d 667, 678-79 (E.D.Ky. 2002)*,*

> [A]llegations of medical malpractice or negligent diagnosis and treatment do not state a valid claim under § 1983. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. If a plaintiff has received medical attention, a court will not second-guess the judgment of the medical professionals providing such treatment. *Estelle*, 429 U.S. at 107, 97 S.Ct. 285. A plaintiff is not constitutionally entitled to a particular course of treatment on his own assessment of its necessity. A disagreement with the medical treatment received does not rise to the level of a constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Estelle*, 429 U.S. at 105-106, 97 S.Ct. 285.

Summary judgment will be granted in favor of the defendants on the claims for deliberate indifference to serious medical needs.

V.

The claims against Lawson, the Hardin County Jailer, in his individual capacity must be dismissed as he is not a medical professional and did not made any decision concerning Duke's medical care and treatment, nor was he present at the time of the alleged assault by Hall on September 4, 2004. There can be no liability under § 1983 premised upon a theory of *respondeat*

---

[3] There is an additional episode for which Duke alleges deliberate indifference to his serious medical needs. On March 19, 2005 Duke reported to the officer administering medications that he needed medical attention. The officer then attempted to call the medical unit for instructions. Duke laid down on his bed, refused his medications, and fifteen minutes later, after apparently getting up to go to the bathroom, passed out and hit his head. He was transported to the hospital where he was evaluated and treated. The period of time from Duke's request for medical attention until he rose and passed out was brief. There is no evidence that his request for medical care was ignored. Indeed, this corrections officer was not named as a defendant herein. Nothing more need be said of this allegation.

superior. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006), *citing, Monell,* 436 U.S. at 692-94.

VI.

With respect to the claim for unconstitutional assault upon Duke by Hall on September 4, 2004, "when authorities use force to put down a prison disturbance...the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 17 L.Ed.2d 156 (1992)(internal citations and quotations omitted). Here, force was applied to end the encounter between Hall and Duke. It is not disputed that Duke got up from his chair and approached Hall. The forceful return of Hall to his chair was not an unprovoked attack, but rather a step to restore discipline. The contemporaneous evidence concerning Duke's physical state belies his contention that he was sadistically abused. In fact, Duke did not complain of any injuries to Dr. Miller. Soon after the incident, he was observed to rest and sleep soundly during the night after being placed in the MedWatch Cell. He did not require medical care for injuries inflicted by Hall's use of force and, indeed, complained of none until weeks later. Accepting for the sake of argument that he felt pain as a result of Hall's actions, the minor extent of any such injury indicates that the force was not sadistically applied. *See, Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993)(finding it proper to consider the extent of plaintiff's injuries in applying Eighth Amendment analysis).[4] Summary judgment will be granted in favor of Hall in his individual capacity for unconstitutional assault.

---

[4] We reject out of hand the suggestion that Duke's purported bleeding into his colostomy bag was the result of the alleged assault on Duke. There is a complete absence of any evidence to suggest a connection between any bleeding episode and the encounter between Duke and Hall. On summary judgment, the defendant may not merely surmise the cause. He must come forward with verifiable medical evidence to substantiate such an allegation.

VII.

The parties do not address Duke's state law claims. He has appended a laundry list of state law claims which the court will decline to address. In light of our dismissal of all of the federal claims in this action, we decline to address the pendent state claims under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and its progeny.

**IT IS SO ORDERED.**